IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DION RAY TJELLE, | ) | |
| | ) | |
| Plaintiff-Claimant, | ) | |
| | ) | 11 C 4907 |
| v. | ) | |
| | ) | Jeffrey T. Gilbert |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | Magistrate Judge |
| | ) | |
| Defendant-Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Claimant Dion Ray Tjelle ("Claimant") brings this action seeking review of the decision by Respondent Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying Claimant's application for disability insurance benefits. This matter is before the Court on the parties' cross-motions for summary judgment [Dkt.##11, 13]. Claimant asserts one issue on appeal, arguing that the Commissioner did not meet his Step Five burden of the Sequential Evaluation of Disability because he failed to properly apply Social Security Rule ("SSR") 96-9p by not specifying the frequency of Claimant's need to alternate between sitting and standing. For the reasons explained in this Memorandum Opinion and Order, Claimant's motion for summary reversal or remand is denied [Dkt.#11], and the Commissioner's motion for summary judgment is granted [Dkt.#13]. The Commissioner's decision denying Claimant's application for disability benefits is affirmed.

# I. BACKGROUND

## A. Procedural History

On March 5, 2009, Claimant filed a Title II application for disability insurance benefits, alleging a disability onset date of January 23, 2009. R.135-43. Claimant alleged that he was unable to work primarily on account of his back pain. R.162. The Commissioner initially denied his application on June 19, 2009, and again upon reconsideration on September 30, 2009. R.80-99. On May 13, 2010, a hearing was held before Administrative Law Judge Sylke Merchan (the "ALJ"). R.100-01. Medical expert Walter J. Miller Jr., M.D. ("ME") and vocational expert Pamela Tucker ("VE") appeared and testified at the hearing along with Claimant and his wife Lynette Tjelle. R.67, 73, 30, 65. Claimant was represented by attorney Jennifer Mansberger. The ALJ denied the claim on July 20, 2010 (R.22), finding that Claimant had not engaged in substantial gainful activity since the alleged onset date; had degenerative disc disease, a severe impairment; had the residual functional capacity ("RFC") to perform a limited range of light work with a sit/stand option; was unable to perform any past relevant work; and could perform a significant number of jobs in the national economy. R.14-21. The Appeals Council denied Claimant's request for review on May 17, 2011, making the ALJ's decision the final decision of the Commissioner. R.1. On November 21, 2011, Claimant filed this action for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## B. Hearing Testimony—May 13, 2010

### 1. Claimant Dion Ray Tjelle

At the time of the hearing, Claimant was 34 years old, married, and had five children, ages 21, 19, 19, 11, and 8. R.34. He graduated high school. R.35. Until April 2010, he had worked for ten years as a mail deliverer at the Painesville Post Office. R.39. He would case mail

four hours a day, loading up to 80 pounds of equipment; the last four hours of his day he would drive and deliver the mail. R.39.

Claimant testified that he had problems with his back for ten years, but that he aggravated it trying to salvage things from his flooded basement in January 2009. R.39-40. He had been seeing a pain specialist for his back pain prior to the flood. R.41. After the flood, the pain specialist proscribed three different injections and physical therapy. R.42. Having no relief, Claimant had his vertebrae surgically fused in March 2009. R.42. He denied doing well after the surgery and testified that Dr. Harvey never released him back to work. R.43, 45. As a result, he was fired in April 2010. R.45.

Claimant testified that, at the time of the hearing, he was helping his wife with her paper route; he only has to lift individual papers because someone else put the bundles in his van for him. R.38. If he is doing the entire route, he will get help from a friend. R.54. He testified that in the hour it takes him to complete the route, he gets out and walks one or two times and stretches an additional one or two times. R.55.

Claimant described his pain as constant from the top to the bottom of his spine. R.45. He also had pain and numbness in his left leg and the lower left side of his body; the pain sometimes radiated into his feet. R.45-46. Claimant testified that he was taking Norco and Valium, which provided temporary pain relief, but made him feel cloudy and lightheaded. R.47-48. He informed the ALJ that he does the dishes some days, but that he has to take frequent breaks because he cannot stand for very long. R.50. He also did laundry in small stages because he was unable to carry thing up and down stairs. R.50. After his surgery, he switched from coaching his 12 year old son's baseball team to his younger son's team because it was less physically demanding. R.50. Claimant had games twice a week, each lasting for an hour and a half. R.51.

Claimant testified that he could only stand for ten minutes at a time and sit for 20-30 minutes before he needed to get up and stretch. R.52. Claimant testified that his back tingles, his muscles spasm in his neck, low back, and calves hourly, and he has swelling after walking. R.58. After walking for half a block, he would squat or touch his toes for five minutes to relieve the pain. R.58. He prefers laying down to sitting. R.53. Claimant stated that he can lift a gallon of milk or twelve cans of soda and described problems with overhead reaching. R.53.

He had been doing aquatic therapy independently since January and had discussed additional surgery for his remaining herniated discs but was hesitant because of his last operation. R.56-57. He testified that he was also holding off on a facet block and nerve root injections because he did not have enough money to pay his existing medical bills. R.64.

### 2. Claimant's Wife Lynette Tjelle

Mrs. Tjelle described Claimant's daily activities as follows: he gets his children clothed and occasionally prepares them breakfast; he occasionally does dishes, which takes him an hour and a half; he puts laundry away "once in a while"; and he spends the rest of the day sleeping. R.65-66.

### 3. Dr. Walter Miller—Medical Expert

The ME diagnosed Claimant's impairments as "herniated disc, degenerative disc disease and surgery" based on the complaints Claimant made in his 3368 form and the fact they were consistent with the record as a whole. R.67-68. The ME considered "all" of the listed impairments and concluded that Claimant did not have a listed impairment. R.69-70. He did not recommend any restrictions beyond light work. R.71.

### 4. Pamela Tucker—Vocational Expert

According to the VE, Claimant's past relevant work was as follows: janitor, medium, semiskilled; assembler, light, unskilled; rental clerk, medium, semiskilled, heavy as performed; rural carrier, medium, unskilled. R.74. The VE concluded that a hypothetical individual of Claimant's age, education, and work experience capable of light work with no ladders, ropes, or scaffolds, and occasional postural limitations would be capable of Claimant's past work as an assembler. R.74. When the ALJ added a sit/stand option to the hypothetical, the VE testified that the the hypothetical individual would be capable of work such as a packer, a line inspector, and assembler. R.74-75. When the ALJ added the limitation of frequent overhead reaching, the VE said the number of assembler and line inspector positions would remain the same. R.75. When the ALJ changed the exertional level from light to sedentary the VE testified that this hypothetical individual would be capable of work as an order clerk, a bench worker, and an assembler. R.75.

### C. Medical Evidence

### 1. Dr. Chatrath—Riverside Community Health Center

On July 3, 2008, Claimant saw Dr. Chatrath at Riverside Community Health Center for back pain. R.365. A July 24, 2008 MRI of Claimant's lumbar spine revealed mild degenerative spondylosis with a small disc buldge and small posterior disc herniation at L4-L5 level and mild posterior facet arthorpathy at L4-L5 and L5-S1. R.370. Dr. Chatrath recommended going to a pain clinic for steroid injections. R.372.

On June 9, 2009, after Claimant's surgery on March 29, 2009, Dr. Chatrath noted that Claimant was still in pain and his range of motion was slightly restricted. R.414. He also filled out a spinal disorder evaluation form for the Bureau of Disability Determination Services

("DDS") noting Claimant's need to change position or posture due to pain more than once every two hours. R.354.

### 2. Dr. Donald Roland—Metro Area Pain Consultants

Claimant received injections on August 14, August 28, and September 15, 2008 by Dr. Roland's office. R.282, 280, 278. On September 28, 2008, Claimant reported significant, but temporary improvement; Dr. Roland recommended physical therapy. R.274. On February 5, 2009, a facet joint injection, scheduled by Dr. Roland, was performed. R.271. On February 12, 2009, Dr. Roland recommended a functional anesthetic diskogram and proscribed physical therapy. R.270. A February 27, 2009 discography revealed that Claimant's pain resulted from an annular tear at L4-L5. R. 252. Dr. Roland then recommended a neurosurgical evaluation. R.267.

### 3. Dr. Harvey—Neurosurgery Consultants

Dr. Harvey of Neurosurgery Consultants evaluated Claimant on March 17, 2009. A posterior decompression and fusion with posterolateral and interbody arthrodesis, and pedicle screw instrumentation was performed on March 25, 2009. R.317. At his post surgical follow up with Dr. Harvey on May 8, 2009, he denied pain aside from general soreness and was cleared for physical therapy. R.326-27.

On September 8, 2009, Claimant reported that his physical therapy had been put on hold for two and a half weeks due to swelling. R.500. Claimant returned to therapy on October 12, 2009 and November 2, 2009. R.485-95. Physical therapy again was put on hold on December 1, 2009, however, after an abnormal EMG revealed that his sensory and motor nerves were affected with demyelinization. R.476-77. On January 19, 2010, Claimant informed Dr. Harvey that although his muscle spasms had improved significantly, almost all positions aggravated his pain. R.464. His examination revealed moderate tenderness in the lumbar paraspinal area and

moderately restricted range of motion in all directions eliciting pain. R.465. On February 9, 2010, Claimant complained of "persistent low central back pain that radiates with numbness, tingling, and burning to his left buttock, anteriorly down his left thigh and [numbness and tingling] laterally down his left calve [sic] extending to entire foot." R.452.

On April 29, 2010, Claimant reported slight improvement (R.441), and on May 6, 2010, he requested a change in his medication following an increase in muscle spasms as a result of his coaching activity (R.438).

### 4. Dr. Bilinsky—Physical Residual Functional Capacity Assessment

On June 18, 2009, Dr. Bilinsky completed a Physical RFC Assessment form for the Social Security Administration, finding Claimant capable of light work with occasional postural limitations. R.417-18. Dr. Solfia Saulog confirmed Dr. Bilinsky's RFC on September 15, 2009. R.425.

### D. The ALJ's Decision—January 14, 2010

After a hearing and review of the medical evidence, the ALJ determined that Claimant has not been under a disability as defined under sections 216(i) and 223(d) of the Social Security Act from January 23, 2009 through January 14, 2010. R.21. The ALJ found that Claimant had the RFC to perform light work as defined in 20 CFR 404.1567(b) except he can never climb ladders, ropes, or scaffolds; can occasionally perform all other postural functions; requires a sit/stand option; and can frequently perform overhead reaching. R.15. The ALJ therefore denied his application for disability insurance benefits. R.22.

The ALJ evaluated Claimant's application under the required five-step sequential analysis (20 CFR 404.1520(a)). R.12-21. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since January 23, 2009, the alleged onset date.[1] R.14.

At step two, the ALJ found that Claimant had the severe impairment of degenerative disc disease. R.14. The ALJ explained that this impairment is established by the medical evidence and is "severe"[2] within the meaning of the Regulations because it causes significant limitations in Claimant's ability to perform basic work activities. R.14. Because Claimant testified that he is 5'7'' and 220 pounds, the ALJ also considered the effects of obesity on his ability to perform work related activities. R.14. The ALJ found that "obesity is a nonsevere impairment as it does not cause more than minimal limitations on Claimant's abilities to perform work related activities…." R.14.

At step three, the ALJ determined that Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). R.15. In so determining, the ALJ stated that no treating or examining physician indicated findings that would satisfy the severity requirements of any listed impairment nor did a medical expert testify that the severity of Claimant's impairment meet or equal a listing. R.15. The ALJ specifically considered Listing 1.04 for disorders of the spine and explained why Claimant failed to meet

---

[1] Although Claimant's earnings records show first quarter earnings for 2009, Claimant testified that such earnings represent accrued annual and sick leave. R.14.

[2] Under 20 SCR 404.1520(c)), the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe". An impairment or combination of impairments is "severe" if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is not "severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1521; SSRs 85-28, 96-3p, and 96-4p).

8

Listing 1.04. R.15. The ALJ also considered any additional and cumulative effects of obesity and found that they did not give rise to a condition of listing-level severity.[3] R.15

The ALJ then found that Claimant had an RFC "to perform light work as defined in 20 CFR 404.1567(b) except he can never climb ladders, ropes, or scaffolds; can occasionally perform all other postural functions; requires a sit/stand option; and can frequently perform overhead reaching."[4] R.15. In making the RFC determination, the ALJ considered Claimant's symptoms to the extent that they could reasonably be accepted as consistent with the objective medical and other evidence as required by 20 CFR 404.1429 and SSRs 96-4p and 96-7p. R.15. The ALJ also considered opinion evidence based on the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. R.15.

The ALJ followed the prescribed two-step process and thoroughly reviewed the evidence in considering the Claimant's symptoms. R.16-19. First, the ALJ found that Claimant's allegations were not fully credible. R.19. The ALJ noted that while she found Claimant credible as to the existence of his impairments, she did not find credible Claimant's allegations regarding the severity and persistence of his symptoms or the functional limitations that they allegedly cause. R.19. The ALJ explained that the record shows Claimant was doing well following his surgery; the diagnostic test results do not confirm that Claimant is as limited as he alleges; Claimant performs daily activities including delivering 40 newspapers a day, coaching a baseball team, and getting his children off to school, helping them with their homework, and taking them

---

[3] There are no Listing criteria in Appendix 1 specific to the evaluation of impairments caused by obesity. SSR 02-1p requires consideration of obesity in determining whether a claimant has medically determinable impairments that are severe, whether those impairments meet or equal any listing, and finally in determining the residual functional capacity.

[4] An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, an ALJ must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e) and 404.1545; SSR 96-8p).

to their activities. R.19. Although there was no diagnosis of obesity on the record, the ALJ considered the effects such a condition would be expected to cause and found that it does not cause more than minimal limitations on Claimant's ability to perform work related activities. R.19.

Furthermore, the ALJ pointed out that no treating or examining physician indicated that Claimant is disabled or even has limitations greater than those identified above. R.20. She noted that the RFC assessment is mostly consistent with the State agency medical consultant's opinions. R.20. The ALJ gave Claimant "the benefit of the doubt," based on Claimant's testimony, by adding restrictions such as the sit/stand option and frequent overhead reaching. R.20.

The ALJ also explained the weight she gave to the opinion evidence. She gave substantial weight to Dr. Miller's opinion, but provided for additional limitations based on Claimant's testimony, and she gave no weight to Nurse Vilt's June 2009 assessment of "complete disability" because the finding of disabled is reserved to the Commissioner. R.20. Furthermore, Nurse Vilt indicated that her opinion was dependent on Dr. Harvey's input and no such input was documented in the record. R.20.

In determining Claimant's RFC, the ALJ accounted for the restrictions that Claimant's physical impairments would be expected to cause in limiting him to less than the full range of light work. R.19. "A limitation of light work, with never climbing ladders, ropes, or scaffolds; occasional performing of all other postural functions; a sit/stand option; and frequent performing overhead reaching, accounts for any such restrictions that the claimant's physical impairments would be expected to cause as well as any side effects from his medications." R.19.

10

At step four, the ALJ concluded that Claimant is unable to perform any past relevant work.[5] R.20. Finally, at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Claimant can perform given his age, education, work experience, and RFC. R.21. The ALJ considered the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. R.21. She noted that Claimant's ability to perform all or substantially all of the requirements of the light level of work had been impeded by limitations. R.21. Taking into account an individual with Claimant's age, education, work experience, and RFC, the VE testified that such an individual would be able to perform the requirements of representative occupations such as a packer of which there are approximately 3,000 in the region;[6] an assembler of which there are approximately 1,300 such jobs in the region; and a line inspector of which there are approximately 300 such jobs in the region. R.21. The ALJ found the VE's testimony consistent with the information contained in the Dictionary of Occupational Titles. R.21. She also noted in a footnote: "Even assuming *arguendo*, and giving the claimant the maximum possible benefit of the doubt by limiting him to sedentary work with the same additional restrictions, the vocational expert was able to identify a significant number of jobs that the claimant would be capable of performing." R.21. She thus concluded that Claimant is not disabled under the Social Security Act (20 CFR 404.152(g)). R.21.

---

[5] The term past relevant work means work performed—either as the claimant actually performed it or as it is generally performed in the national economy—within the last 15 years or 15 years prior to the date that disability must be established (20 CFR 404.1520(f)). In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b) and 404.1565).

[6] The VE testified that she defines the region as Chicago and the six surrounding collar counties. R.21.

11

## II. LEGAL STANDARDS

### A. Standard Of Review

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge between the evidence and the result." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Although the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALJ applied the correct standards and whether there is substantial evidence to

support the findings. *Nelms*, 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

### B. Disability Standard

Disability insurance benefits are available to a claimant who can establish that she is under a "disability" as defined in the Social Security Act. *Liskowitz v. Astrue*, 559 F.3d 736, 739-40 (7th Cir. 2009). "Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is under a disability if she is unable to do her previous work and cannot, considering her age, education, and work experience, partake in any gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Gainful employment is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. 404.1572(b).

A five-step sequential analysis is utilized in evaluating whether a claimant is disabled. 20 C.F.R. 404.1520(a)(4)(i-v). Under this process, the ALJ must inquire, in the following order: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or medically equals a listed impairment; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing other work. *Id.* Once a claimant has proven she cannot continue her past relevant work due to physical limitations, the ALJ carries the burden to show that other jobs exist in the national economy that the claimant can perform. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

### III. DISCUSSION

Claimant raises only one issue in support of his motion: whether the ALJ satisfied the requirements of SSR 96-8p in not specifying the frequency of Claimant's need to alternate between sitting and standing. Claimant contends that the ALJ's disability determination should be reversed on the ground that the ALJ's RFC finding included an allegedly "vague sit/stand provision." (Tjelle Br. 10-12). We disagree and find that substantial evidence supports the ALJ's finding that Claimant could perform a significant number of jobs despite the limitations caused by his impairments and is therefore not disabled.

Claimant argues that SSR 83-12 supports his proposition that an individual who "may be able to sit for a time, but must then get up and stand or walk for a while before returning to sitting…is not functionally capable of doing…the prolonged standing or walking contemplated for most light work." (Tjelle Br. 10-11). SSR 83-12 requires that in such cases, a VE "should be consulted to clarify the implications for the occupational base."[7]

That is precisely what the ALJ did here. During the administrative hearing, the ALJ specifically included a "sit/stand option" in the controlling hypothetical question that she posed to the VE. The ALJ found that a "limitation of light work," which included a "sit/stand option," properly accounted for Claimant's functional limitations. R.15, 19. Although Claimant contends that in both the ALJ's RFC and her hypothetical questions to the VE, the "ALJ failed to specify the frequency of [his] need to alternate between sitting and standing as required by SSR 96-6p" (Tjelle Br. 11-12), courts in this jurisdiction have found that similar hypotheticals satisfied SSR 96-9p because an at-will sit/stand option was reasonably implied. *See*, *e.g.*, *Betts v. Astrue*, No.

---

[7] *See Books v. Chater*, 91 F.3d 972, 980 (7th Cir. 1996) ("SSR 83-12 does not endeavor to decide that there can *never* exist significant light jobs with a sit/stand option…It accordingly directs the SSA in such cases to obtain the testimony of a vocational specialist concerning whether significant light jobs exist that could accommodate the claimant's special limitations.").

14

09-7094, 2011 WL 178922, at *45 (N.D. Ill. May 6, 2011) (an ALJ's hypothetical to a VE that allowed a plaintiff "the option to sit or stand…implies that the hypothetical person would be given the option to sit or stand as needed. Therefore, the ALJ's hypothetical was sufficient under…96-9p…."). "[A] job in which [claimant] could sit or stand 'as needed' would necessarily encompass frequent sitting and standing." *Ketelboeter v. Astrue*, 550 F.3d 620, 626 (7th Cir. 2008).

It was therefore possible for the VE to "estimate the extent of occupational erosion." (Tjelle Br. 12). The VE in fact testified that the inclusion of the sit/stand option would reduce the number of jobs available in the region for a person sharing Claimant's age, education, work experience and RFC. R.74-75. Specifically, she reduced the number of packer positions from 12,000 to 2,500; the number of assembly positions from 3,800 to 1,300; and the number of inspector positions from 900 to 300. R.74-75.

An ALJ has discretion to determine whether to rely on the VE's testimony. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). The ALJ's controlling hypothetical question here reasonably accounted for Claimant's credible limitations. *See Schmidt*, 496 F.3d at 846 ("[T]he ALJ is required only to incorporate into his hypotheticals those impairments and limitations that he accepts as credible."). The ALJ thus reasonably relied on the VE's testimony in finding that Claimant was capable of performing a significant number of jobs despite the limitations caused by his impairments. R.21. *See Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) ("[I]t appears to be well-established that 1,000 jobs is a significant number."); *see also Kelley v. Sullivan*, 890 F.2d 961, 965 (7th Cir. 1989) ("The Secretary's vocational expert testified at the administrative hearing that there were a significant number of jobs available in the economy

15

which offered a sit/stand option. Under the Act and the Secretary's regulations, that fact requires a finding of no disability.").

After reviewing the record, we are convinced that there is substantial evidence supporting the ALJ's finding that Claimant was not disabled because he could perform a significant number of jobs despite the limitations caused by his impairments. R.21. The ALJ's inclusion of a sit/stand option reasonably implied an "at will" standard and thus satisfied the requirements of SSR 96-8p with regard to the frequency of Claimant's need to alternate between sitting and standing.

## IV. CONCLUSION

For the reasons set forth in the Court's Memorandum Opinion and Order, Claimant's motion for summary reversal or remand is denied [Dkt.#11], and the Commissioner's motion for summary judgment is granted [Dkt.#13]. The Commissioner's decision denying Claimant's application for disability benefits is affirmed.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: April 18, 2012